**UNITED STATES of America, Petitioner,**

v.

**James M. BALLARD, Respondent.**

**UNITED STATES of America, Petitioner,**

v.

**Carl ZACHOWSKI, Respondent.**

**UNITED STATES of America, Petitioner,**

v.

**Gene M. VON JONES, Respondent.**

**UNITED STATES of America, Petitioner,**

v.

**Gerald Bryan GAINOUS, Respondent.**

Nos. 87–525–HC, 87–992–HC, 87–526–HC and 87–991–HC.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Nov. 19, 1987.

R.A. Renfer, Jr., and James G. Carpenter Asst. U.S. Attys., Raleigh, N.C., for the U.S.

Todd Conormon and Ed Walker, Federal Public Defenders, Raleigh, N.C., for respondents.

James M. Ballard, Butner, N.C., pro se.

## ORDER

BRITT, Chief Judge.

In each of these cases the United States of America, as petitioner, has filed a motion for authority to involuntarily treat and medicate the respondent who is being held at the Federal Correctional Institution in Butner, North Carolina, (Butner) pursuant to orders of this court entered under the authority of 18 U.S.C. § 4246. Following the decision of the United States' Court of Appeals for the Fourth Circuit in *United States v. Michael Francis Charters, Jr.,* 829 F.2d 479 (1987), all of the respondents refused to grant permission to authorities to administer to them psychotropic medication. Counsel was appointed for each of the respondents. Upon motion an independent psychiatrist was appointed to examine them and, if needed, testify on their behalf. Hearings were conducted on 24 October 1987 and 26 October 1987. In each of the four cases the government called as a witness Dr. Sally Johnson, who is the Director of Forensic Services and Clinical Research at the Mental Health Division of the Federal Correctional Institution at Butner, and each of the respondents called as a witness Dr. Billy Royal, a psychiatrist engaged in private practice in Raleigh, North Carolina.

Inasmuch as these are the first cases arising in this court since the *Charters* decision in which prison authorities at Butner seek permission to forcibly medicate persons housed there, and in view of the similarity of the cases and the use as witnesses of the same psychiatrist, the court has elected to enter this single order.

## DISCUSSION

The motions by the government must be considered by this court in the light of the decision of the court of appeals' opinion in *Charters*. Although the factual setting in *Charters* was different [1] from that presented here and the court specifically limited its holding,[2] it is nevertheless apparent that that decision must provide the guidance for this court in making its decision.

Under *Charters* the first obligation facing this court is to determine whether each respondent is competent to consent to or refuse medical care. As the court said "until such time as [the respondent] is

---

1. Charters, also incarcerated at Butner, had been found incompetent to stand trial but had had no other adjudication of the right of the government to continue to hold him. He was, in effect, a pretrial detainee. In fact, the district court was ordered on remand to determine the legality of his detention.

2. In n. 30, p. 499, of the opinion, the court said "[w]e address only the circumstances of the unconvicted defendant and express no views concerning the rights of convicted prisoners facing forcible treatment with antipsychotic drugs." Of course, each of the respondents before this court is an unconvicted defendant, and in that respect these cases are similar to *Charters*. However, as noted, each of these respondents has been adjudged to be "... presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another ..." under 18 U.S.C. § 4246 and ordered committed to the custody of the Attorney General for treatment.

found medically incompetent,[3] his decision to reject antipsychotic drugs is dispositive." *Charters, supra* at 495. If the court finds that a respondent is incompetent to direct his own medical care, then the court must determine "what treatment the patient would, if competent, select for himself ..." if that can be done. *Charters, supra* at 484. If not, the court must then "direct treatment in accordance with the patient's best interest." *Charters, id.* Because the court here finds that with regard to each of the respondents the government has failed to prove that the respondent is incompetent to make a decision with regard to his own medical treatment, it will not be necessary for the court to engage in a "substituted judgment" analysis or a "best interest" analysis.

Each respondent is presumed competent until adjudicated incompetent. To determine a respondent's competence, this court must evaluate whether he "... has followed a rational process in deciding to refuse antipsychotic medication and can give rational reasons for the choice he has made." *Charters, supra* at 496.

*Charters* did not specify the standard of proof which the government must meet in order to overcome the presumption of competence although it can be implied that the court intended to adopt a "clear, cogent and convincing" standard. *See* n. 26, p. 496, where *Grannum v. Berard,* 70 Wash. 2d 304, 422 P.2d 812, 815 (1967), was cited for the proposition that "to overcome the presumption of competency, proof must be had by clear, cogent and convincing evidence that the patient does not comprehend the nature, terms and effect of a consent given for a surgical operation." This court need not rely on that however as the government here has failed to meet even a lesser standard.

Guided by the principles above enunciated, the court will analyze the facts presented in each of the four cases.

**JAMES M. BALLARD**

Charged with mailing threatening communications, in violation of 18 U.S.C. § 876, and threatening court officers, in violation of 18 U.S.C. § 1503, in the United States District Court for the Eastern District of Pennsylvania, James M. Ballard (Ballard) was referred to Butner for psychiatric evaluation under 18 U.S.C. § 4241(d) where he was found incompetent to stand trial.

On 12 June 1987 the warden at Butner filed a certificate with this court that Ballard "is currently suffering from a mental disease or defect as the result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another" and that "suitable arrangements for state care and custody ... are not currently available" and requested a hearing pursuant to the provisions of Title 18, United States Code, Section 4246(a).

At that hearing the court found that Ballard had threatened the life of one of his treating physicians and one of his correctional counselors and had mailed a threatening letter to Federal Judge Levin Campbell. Based on the opinion of the psychiatrist at Butner, concurred in by Dr. Bob Rollins an independent psychiatrist appointed to represent his interest, the court found that Ballard suffers from chronic schizophrenia and that his release would create a substantial risk of bodily injury to others or serious damage to the property of others. The court, therefore, ordered that he be committed to the custody of the Attorney General for hospitalization in a mental health facility pursuant to 18 U.S.C. § 4246(d).

During a part of his stay at Butner Ballard has been kept in seclusion because of a determination by staff members that he was an imminent danger to both inmates and staff. At that time he was floridly psychotic. He was extremely distraught, having feelings of persecution and believing that he and others were going to die. He was extremely confused about his sexu-

---

**3.** Throughout its decision the *Charters* court made reference to "medical competence." The court interprets that language in the context in which it was used to mean mental competence to make a decision regarding medical care.

al identity and was convinced that the government was persecuting him. In the opinion of Dr. Johnson he was "rather pitiful." The only treatment he was receiving during that period of time was psychotherapy.[4] Thereafter, Ballard was placed on medication, including Prolixin and Lithium. He showed marked improvement and was released to the open population.[5]

Although he had consented to the medication he was receiving, Ballard withdrew that consent following the *Charters* decision. His last treatment was on the 2nd of October 1987. In the opinion of Dr. Johnson, Ballard's condition will decompensate to the extent that ultimately it will be necessary to place him in seclusion for his own protection and that of the staff and inmate population at Butner. Ballard stated to Dr. Johnson that he was discontinuing the medication for the following reasons:

1. He doesn't believe that he is mentally ill;

2. He doesn't need the medication;

3. The medication causes him to have sleep problems;

4. He has not noticed any difference in his condition when taking the medication;

5. His desire to air other issues at a hearing.

In the opinion of Dr. Johnson, Ballard is not competent to make a rational decision concerning his medical treatment.

When being examined by Dr. Royal, Ballard stated additional reasons for his refusal to take the medication; to wit: that he had suffered the side effects of drooling, gnashing of the teeth and involuntary movements of his hands, feet and legs. Dr. Royal indicated that he did not observe the drooling or gnashing of teeth by Ballard but did personally observe a movement problem. In the opinion of Dr. Royal defendant is mentally competent to make a decision with regard to his medical treatment.

Ballard testified that the risk of side effects was *not* the reason he refused to continue the medication. Rather, he expressed concern about his employability after his release from incarceration. Specifically, he is concerned that if he is released on condition that he take certain medications he will not be able to live up to that condition because of local conditions or because someone would not let him take it.[6]

Based upon all of the evidence presented, the court finds that the government has failed to prove that Ballard was mentally incompetent to make the decision to terminate the prescribed medication. The Fourth Circuit stated in *Charters* that should an inmate "... refuse antipsychotic medication because he believes that the risk of side effects and the possibility of

---

**4.** The basic options for treatment of patients with mental diseases available to medical personnel anywhere are also available at Butner. Primarily this consists of individual psychotherapy, group psychotherapy, medication, isolation and isolation with restraint. Of course, different options are available under "therapy," such as recreational therapy, occupational therapy, education, etc. Butner also has available the full range of medications, including tranquilizers. However, the use of such medication must be separately indicated for each patient.

**5.** One in the open population is able to move about freely among other inmates and prison personnel. One in isolation is restricted to a single cell with a locked door with little interaction with other individuals.

**6.** Ballard's thinking on this point is confused and somewhat irrational. Ballard, who has an extremely high IQ, is very knowledgeable about the different kinds of antipsychotic drugs. He

recognizes that such drugs have been a help to him in the past and frankly concedes that he has minimal side effects therefrom. However, he seems to feel that he, rather than Dr. Johnson and the medical personnel at Butner, is best able to determine the dosage of the medication he should take. By opting out of the medication regimen Ballard will receive none of the benefits therefrom and will, in the opinion of Dr. Johnson, be destined to a return to isolation. The most appropriate level of the dosage of antipsychotic medication can best be achieved by establishing a level at which the benefits are highest and there are minimal or no side effects and then gradually decreasing the dosage to the point where the benefits are not diminished. In Dr. Johnson's opinion Ballard had reached the point where the dosage used could begin to be reduced. Sadly, if and when the medication program is reinstituted there is a probability that it will take a higher dosage unit to achieve the same results and an increase in the probability of adverse side effects.

permanent injury outweigh the possible benefits of that medication to him, it will be difficult for him to be found incompetent by virtue of that judgment." Ballard stated to both Dr. Johnson and Dr. Royal that he was refusing to take the medication because of the side effects.[7]

Of prime importance to the court in arriving at this decision is the expert opinion of Dr. Billy Royal that Ballard is competent to make this decision. Although Dr. Johnson, also an expert, stated a view directly to the contrary, the court is unable to say that the opinion of Dr. Johnson outweighs the opinion of Dr. Royal.[8]

## CARL ZACHOWSKI

After having been found incompetent to stand trial Carl Zachowski (Zachowski) was committed to the custody of the Attorney General under 18 U.S.C. § 4246 from the United States District Court for the District of New Jersey. Zachowski has been diagnosed as having a schizo-affective disorder. He suffers paranoid and grandiose delusions. He has experienced hallucinations and expressed a belief that he is on a mission from God. Prior to his admission to Butner he had been treated with antipsychotic medication and Lithium and had responded relatively well. At Butner Zachowski agreed to take antipsychotic medication but refused to take Lithium because of a basic misunderstanding of its side effects. He has shown improvement in his symptoms since being at Butner but has not achieved maximum improvement in the opinion of Dr. Johnson because of his failure to take Lithium. Following the decision in *Charters* he has elected to terminate the antipsychotic medication also. His prognosis without antipsychotic medication and Lithium is poor. Based on his past history, his symptoms will become more overt and interfere with his day-to-day functioning, necessitating the placing of more restrictions on him. It is predicted that he will become increasingly more paranoid and grandiose and threatening to others to the point that he will pose a danger to others and may become suicidal.

Zachowski does not believe that he is mentally ill and states that he has experienced some side effects from the medication that he had been taking.[9] Dr. Johnson testified that some fainting episodes suffered by Zachowski were also probable side effects.

Zachowski last received an injection of Haldol Decanoate on 29 September 1987. Since that time the symptoms of his illness have become more pronounced. In the opinion of Dr. Johnson he is not mentally competent to make a medical decision regarding his psychiatric care.

In the opinion of Dr. Royal, Zachowski is mentally competent to make a decision concerning his medication. He also is of the opinion that Zachowski's decision was made through a rational process.

Zachowski testified that he decided to discontinue the treatment of Haldol because it had not helped with any of his delusional thinking and that it was causing him to be restless and have crazy dreams. As a part of his restlessness he testified that while on the medication he did not have a long attention span and could not concentrate enough to read. He further testified that he realized that if he discontinued his medication it might result in his being placed in seclusion if his condition deteriorated but that he preferred seclusion to medication. Zachowski even testified that if faced with the choice of being placed in restraints or continued on the medication he would choose the former.

---

**7.** The court is discounting the fact that by his own testimony at the hearing Ballard took a contrary position.

**8.** Indeed, in an inquiry such as that facing the court it is difficult to imagine a situation in which the court could *ever* give the testimony of one psychiatrist such weight.

**9.** Zachowski stated loss of sleep and involuntary body movements as side effects. However, before the *Charters* decision he was apparently an *advocate* of Haldol Decanoate, pointing out to other patients the marked decrease in the number of side effects he had experienced on it as opposed to other medications which he had taken in the past.

Based on the evidence presented, the court finds that the government has failed to prove that Zachowski is mentally incompetent to make a decision with regard to his medical care and treatment and particularly with regard to whether to take antipsychotic medication. As with Ballard this decision is based primarily on the opinion of Dr. Royal. Absent that, the court would have no difficulty in finding by clear and convincing evidence that Zachowski is not mentally competent to make such a decision.[10]

### GENE M. VON JONES

Gene M. Von Jones (Von Jones) was committed to Butner for the purpose of determining his competency to stand trial on a charge of threatening a federal judge. After having been found incompetent to stand trial, he was brought before this court on a petition under 18 U.S.C. § 4246. After hearing the testimony, including that of Dr. Bob Rollins, an independent psychiatrist, this court found that Von Jones was presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another and ordered his commitment and treatment.

Von Jones suffers from chronic paranoid schizophrenia. During his stay at Butner he has been in seclusion and in the open population and has been treated with psychotropic medication. Following the decision in *Charters* he elected not to continue his medication. He described only minimal side effects of the medication to Dr. Johnson, and significant side effects were not observed by the medical staff.

While on medication the medical staff observed marked improvement in his level of functioning and a marked decrease in his overt psychotic symptomatology. While on medication he has been able to function in the open population, whereas his history indicates that without medication his condition deteriorates to the extent that he presents a direct threat to himself and others.

In the opinion of Dr. Johnson, Von Jones is not mentally competent to make a rational and informed medical decision concerning his treatment.

The only reason given by Von Jones to Dr. Johnson for refusing his medication was that he did not believe that he was suffering from a psychiatric illness.[11] Additionally, he informed Dr. Johnson that a newspaper article said the drug was bad.[12]

Von Jones told Dr. Royal that he discontinued the medication because it made him feel badly, reduced his energy, made him drowsy, created sleep problems, caused

---

**10.** A clue to his mental capacity can be taken from the following excerpt from his testimony:

I'm in here for threatening the President of the United States. I threatened a man. I threatened to blow up the White House with the missiles. That's because I'm on a mission from God. God can do anything. So far, God hasn't done anything for me and I'm getting a little disgusted with God but that's between me and God. I know why I'm going through this and because I've done some bad things in my life. Now I am here for threatening to blow up the White House. If I'm on a mission from God, the President has something to worry about. If I am not on a mission from God, the President doesn't have anything to fear. I don't see how anybody's mental state could deteriorate any further than that. For me to think I could blow up the White House with missiles, I have to be out of my mind.

**11.** It is noted that all four of the respondents denied having a mental illness, a reason cited by

the *Charters* decision as not being a competent decision based on rational reasons. However, the court cannot consider that testimony in isolation and must weigh it together with all other evidence presented, the most important of which, as indicated, is the opinion testimony of the expert psychiatrists. Each respondent also verbalized, at one time or another, concerns over the adverse side effects, a reason cited by *Charters,* as being a rational one. However, it is extremely difficult to determine, from the evidence presented, whether any respondent had a genuine concern about the side effects or was merely parroting language from *Charters* or the newspaper article. This illustrates the difficulty in deciding the mental capacity of any of the respondents. *See,* Testimony of Dr. Johnson, p. 627, *infra.*

**12.** Apparently the newspaper article was one appearing in the *Washington Post* concerning the *Charters* decision. Photostatic copies of the article were circulated among the inmates at Butner.

gastrointestinal problems and his fear that it would cause long-term problems. In the opinion of Dr. Royal, Von Jones is mentally competent to make a rational decision in regard to his psychiatric care.

Von Jones himself testified that the medication makes him sick, interferes with his vision, gives him stomach pains and makes him tiresome. In addition, he testified that he just did not like to take drugs. Von Jones does not believe that he is mentally ill and, therefore, feels that he does not need medication.

Based upon the evidence presented, the court finds that the government has failed in its burden of proving that Gene M. Von Jones is mentally incompetent to make a rational decision with regard to his medical care.

### GERALD BRYAN GANIOUS

Gerald Bryan Ganious (Ganious) was charged with threatening the President of the United States and was sent to Butner for a determination of his competence to stand trial. After a determination that he was not competent to stand trial and upon petition from the government, he was committed to the custody of the Attorney General for treatment under 18 U.S.C. § 4246.

Ganious suffers from chronic schizoprenia, paranoid type. He has paranoid and grandiose delusional ideas concerning the military and his position and role therein. He expresses an opinion that World War III is about to begin and that he needs to take action. He often becomes agitated and expresses hostility toward others and, without medication, has been unable to function in the open population, both because of his own belief and because of the assessment by Butner officials that he would present a danger to others. Since being on medication he has functioned in the open population but still maintains his delusional ideas. Ganious has been receiving Prolixin Decanoate and Cogentin. Following the decision in *Charters* Ganious elected to terminate the medication which he had been receiving. Dr. Johnson has not observed any side effects from the medication. The only reason given by Gan-

ious to Dr. Johnson for discontinuing his medication was that he felt that the medication was not doing him any good. In the opinion of Dr. Johnson, Ganious' prognosis without medication is poor. In her opinion he is not mentally competent to make a decision concerning his medical and psychiatric care.

In an interview with Dr. Royal, Ganious stated that he wanted to discontinue his medication because it left him with a bad sleeping pattern, with lethargy, inability to take exercise as he desired, memory problems, increased blood pressure and weight gain. In the opinion of Dr. Royal, Ganious is mentally competent to make a determination on whether to discontinue his medication.

Ganious testified that he decided to stop taking the medication because it affects his sleeping pattern, causing intense dreams and restlessness, and inability to exercise, causing him weight gain. He further testified that if faced with a choice of forced medication or seclusion he would choose the latter. Ganious also testified that he did not feel that he had a mental illness and, thus, did not need to be medicated.

Based upon the evidence presented, the court finds that the government has failed to prove that Ganious is mentally incompetent to make a decision with regard to his medical and psychiatric care.

### CONCLUSION

Each of these respondents is being held at Butner because suitable placement in a state facility is not available. In each case a treatment program, including the use of antipsychotic drugs, has been prescribed and has proven in the past to be beneficial. Given the ability to proceed, Dr. Johnson and her colleagues would seek to try to stabilize each individual and manage him with the lowest dosage indicated to effect good symptom remission. In the words of Dr. Johnson: "What I'm asking for is the ability to develop and to continually review a rational treatment plan and implement it with a person when they don't have the capacity to make that decision themselves."

As Dr. Johnson pointed out in testifying with regard to respondent Von Jones, the

mental capacity of these patients can vary from day to day.

[T]he intensity of the symptoms to some degree are going to fluctuate on a day-to-day basis. An example would be that he may one day be very preoccupied with his delusions and on another day he may be preoccupied with something else or some real life event in [sic] holding his attention, and so his mental status within a range is going to fluctuate on a day-to-day basis. That's true of most types of psychopaths, but it's clearly true of people who suffer from schizophrenia.

He is very intelligent and having sufficient intelligence to actually have a factual understanding of information given to him [sic] and he can remember things and I can tell him about side effects or he can read about them and he can tell you that information or he can read it on the bulletin board or read it in the papers, but his illness does interfere with him rationally using that information in relationship to himself because it doesn't matter how much information he has if we get back to the base problem, which is that he doesn't understand that he has this major psychiatric problem. [sic] He doesn't want to accept that or to believe it. He doesn't want to come to grips with it and take what steps he can or could be taken [sic] to deal with it. It's very difficult, if you look at the situation in the big picture, for men to perceive that he is competent [sic] even though he may be able to understand a lot of the side effects and even though he may be able today not to accuse anyone in the court of paranoid ideas or conspiracies he believes to be going on. [sic] An individual with his illness is not prohibited [sic] to pulling it together for short periods of time. The course of the illness and how he looks, not only today, but yesterday and last week and how he will look next week and how he looks when he has been medicated and unmedicated in the past and what he has demonstrated by his behavior over a long period of time to [sic] speak to the whole issue of competence, not whether he can answer questions today or not correctly or give pat answers. It's how he can use the infor-

mation, what his rational understanding of that is, and can he perceive the effect of this illness over an extended period of time. We don't have any information to date historically from family members to demonstrate that he can. [sic] Despite numerous interventions in his case, he has never been able to maintain treatment consistently enough to actually bring him to a point of competence where he could make good decisions about what his future might hold. So I think it's really important to consider the whole picture. We're not dealing with an emergency situation as much as we're dealing with a situation that isn't going to change, except in the direction of getting much worse, and I think that's the key.

Although the quoted testimony came from the Von Jones case, Dr. Johnson indicated that the testimony was applicable to all four respondents.

Such is the dilemma facing officials at Butner. Such also is the dilemma facing this court. However, unless and until the government proves that an inmate in the status as these respondents is mentally incompetent to do so himself, prison authorities may not make the decision to forcibly medicate.

The motion by the government in each case for authority to involuntarily treat and medicate the respondent is DENIED.